UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| GENARD DENEZ CHESTNUT,<br><br>    Plaintiff,<br><br>v.<br><br>TONY ANDERSON, DAVID SNOW, MICHAEL BROWN, STERLING PEUGH, TRENT RULEVITCH, SIFOA ROBBINS, WILLIE OLIVER, LYNDELL HAMPTON, ROBERT PETRY, JOEL STARLING, and ROBERT BROWN, individually,<br><br>    Defendants. | Case No. 3:23-cv-1478 |

**COMPLAINT FOR DAMAGES**

Plaintiff sues all Defendants and alleges:

**Jurisdiction And Venue**

1. Plaintiff sues pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the First and Eighth Amendments to the U.S. Constitution. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b), this being the district where the claim arose.

3. All conditions precedent to this lawsuit, including exhaustion of administrative remedies, have occurred, been performed, or been waived.

## Parties

4. At all times material hereto, Plaintiff GENARD DENEZ CHESTNUT was an inmate in the custody and care of the Florida Department of Corrections (FDC).

5. At all times material hereto, TONY ANDERSON was Warden at Union Correctional Institution (UCI). He is sued individually.

6. At all times material hereto, DAVID SNOW was Emergency Action Center (EAC) Officer at Union Correctional Institution. He is sued individually.

7. At all times material hereto, MICHAEL BROWN was a correctional captain at Union Correctional Institution. He is sued individually.

8. At all times material hereto, STERLING PEUGH was a correctional lieutenant at Union Correctional Institution. He is sued individually.

9. At all times material hereto, TRENT RULEVITCH was a correctional sergeant at Union Correctional Institution. He is sued individually.

10. At all times material hereto, WILLIE OLIVER was a correctional officer at Union Correctional Institution. He is sued individually.

11. At all times material hereto, LYNDELL HAMPTON was a correctional officer at Union Correctional Institution. He is sued individually.

12. At all times material hereto, ROBERT PETRY was a correctional officer at Union Correctional Institution. He is sued individually.

13. At all times material hereto, JOEL STARLING was a correctional officer at Union Correctional Institution. He is sued individually.

14. At all times material hereto, ROBERT BROWN was a correctional sergeant

at Union Correctional Institution. He is sued individually.

15. At all times material hereto, MICHAEL COLLINS was a medical provider at Union Correctional Institution who treated Chestnut. He is sued individually.

16. All the above Defendants were acting under color of law.

### Common Allegations of Fact

17. The State of Florida Department of Corrections (FDC) holds thousands of people in solitary confinement, worsening by isolation the emotional deterioration the most vulnerable prisoners including those impaired by mental illness.

18. FDC also undermines the free speech and due process of many inmates, particularly black inmates like Genard Chestnut, who are threatened, humiliated, and physically harmed for complaining about prison staff misconduct.

19. FDC permits officers and medical staff to deny due process and necessary care with impunity by fabricating "refusals" of participation in due process hearings and medical and mental health diagnosis and treatment.

20. The isolation of Confinement and Close Management gives free rein to white supremacists and predatory guards who torment inmates through racial slurs, sexual humiliation, planted contraband, false charges, fictitious excuses for excessive force, denial of food, exposure to cold without bedding or clothes, and chemical agents.

21. Inmates in confinement are frequently denied showers and recreation, phone calls, visits, education, based on fabricated charges. Mail, including legal mail and grievances are tampered with and intercepted. Searches are used to destroy property including family pictures and legal papers. Incompatible inmates are often housed

together and forced to fight each other for retaliation and entertainment.

22. Prisoners are often frustrated in registering complaints by failure to provide grievance receipts, interception of grievances or withholding grievance responses until it is too late for an appeal (since processed grievances must be attached).

### A. Incident at Florida State Prison

23. During 2018, Plaintiff was housed at Florida State Prison (FSP) in Raiford, Florida, across the street from Union C.I. where the events in this case take place.

24. Chestnut had a long history of filing grievances and legal actions at FSP and became the target of officers who were notorious for brutality and racial animus.

25. Plaintiff Chestnut responded to the brutality and racism by writing more grievances and filing more legal actions against the most brutal guards when he was threatened or physically abused and frequently suffered more abuse for his efforts.

26. Many officers who worked at FSP, including Defendant Sgt. Robert Brown, also worked at Union C.I. creating work and social ties between the two prisons.

27. Brown and his colleagues had abused Chestnut at FSP in December of 2018 and Chestnut had written grievances against Brown and his fellow officers.

28. On December 7, 2018, Plaintiff was awaiting transfer from FSP to Suwannee C.I. Plaintiff waited in a holding cell area behind the FSP control room all day.

29. That afternoon, Sgt. Robert Atteberry appeared, though he had no legitimate business in the area, and threatened Plaintiff to the effect that, "We've got something for you. We'll have you fucked up before you leave here."

30. Later, Capt. Steven Lola, Sgt. Williams, and Sgt. Brown entered the holding

cell area. The officers had frequently threatened Chestnut for writing grievances.

31. Sgt. Williams closed a door between the cell and a camera covering the area.

32. Williams told Chestnut to strip down to his boxers and Chestnut complied.

33. Williams then told Chestnut he'd "paint the cell red" with Chestnut's blood.

34. Williams hit Chestnut with a closed fist stating, "you think you got away? I've killed people before. I'll stab you to death and plant a knife on you."

35. Williams and Lola beat Chestnut with their fists. Sgt. Brown wrestled him to the ground and beat his face and head holding his handcuffs like brass knuckles.

36. Chestnut became unconscious, lost control of his bowels, soiling his boxers.

37. The officers then called for backup and Capt. Lola walked out of the holding cell area to give the official cover story for the fierce and sustained beating.

38. The backup officers pulled Chestnut out of the holding cell, cuffed behind his back, wearing nothing but boxers, and bleeding from his face and head.

39. Capt. Lola ordered the officers to put him back in the cell to get him dressed.

40. Chestnut was taken to medical. His face was swollen with many knots, gashes, chipped teeth, with visible face and head injuries that required stitches.

41. Brown reported they had been placing Chestnut in full restraints to put him on the transport van when he tried to strike an officer and they had to use force.

42. But full restraints would have to be applied *after* an inmate is fully dressed since it would be impossible to dress an inmate after he was in full restraints.

43. And Brown did not explain why Chestnut came out of the cell in boxers.

44. Inmates are not transported in their underwear or with hands cuffed in back;

in full prison uniforms, with a black box, a waist chain, and cuffs in front.

45. All the visible injuries and blood shown on the hand-held camera will show that the reports that force had to be used on Plaintiff as restraints were being applied for transport were fabricated to cover-up a criminal assault, a parting shot.

46. The abuse at FSP was part of a pattern of abuse by a group of security officers who routinely indulge in brutal acts against prisoners at Florida State Prison in retaliation for expressions of protected speech, including grievances on abuse.

47. These groups of officers have been referred to as a "negative subculture" by use of force auditors and as a "goon squad" by long-time Florida prison observers.

48. After the December 2018, incident, Capt. Lola said he would call ahead to his friends at the institution where Chestnut would be transferred and tell them to finish taking care of Plaintiff. He told Chestnut "You better keep your mouth shut!"

B. Move to Union Correctional Institution

49. On December 2, 2019, after being housed in other prisons, Chestnut was moved to Union Correctional Institution, across the street from FSP.

50. As noted, officers would frequently go back and forth between the two institutions, working for one institution, then the other. Close friendships and associations formed between officers at Union C.I. and FSP.

51. Robert Brown, who had abused Chestnut at FSP and now worked at Union C.I., remembered Chestnut from 2018 and still had a score to settle because Chestnut, despite warnings, wrote him up over the December 2018, incident.

52. At Union C.I., Brown took every opportunity to threaten Chestnut and

remind him of the day he and other FSP officers beat his face with steel handcuffs.

53. For some time, other officers at Union C.I. had been threatening and harassing Chestnut and trying to provoke an incident to justify another use of force.

54. On December 18, 2019, Plaintiff was housed in Union C.I., V-Dorm, Cell 4107. Between 9 and 10 a.m., Chestnut was sprayed repeatedly with pepper spray.

55. After the third application of pepper spray, Captain Michael Brown asked Chestnut if he was ready to cuff up and Chestnut responded that he was.

56. Lt. Sterling Peugh ordered Chestnut to comply with a standard strip search.

57. To comply with a strip search, an inmate undresses, turns around and squats and coughs to demonstrate that he does not have anything lodged in his rectum.

58. The process was very familiar to Chestnut and he had done it scores, if not hundreds of times during his time in Florida prisons and he was used to it.

59. However, Florida prison guards would sometimes take advantage of the fact that prison rules did not permit video recording of a naked inmate and would pretend the inmate, after taking off all his clothes, refused to squat and cough.

60. Lt. Sterling Peugh was using this familiar ploy to "run a team" on Chestnut – send in a five-man heavily padded cell extraction team to use force on him.

61. Cell extraction victims very often were brought out of a cell bleeding.

62. On camera, Lt. Peugh accused Chestnut of failing to squat and cough, despite Chestnut calling out that he was complying with Peugh's commands.

63. The camera operator would not have been able to video-record Chestnut since he was naked when he turned around to squat and cough as ordered.

64. Chestnut complied because he knew that if the cell extraction team came in the cell, they would beat him with steel shackles as they did at FSP in 2018.

65. Since Chestnut was a "Psych Level S-3," had he really been resisting orders, Peugh should have called in a mental health professional to do crisis intervention.

66. S-3 Inmates like Chestnut who suffer from mental illness are intended to be aided in dealing with the demands of prison life by mental health professionals trained to do Crisis Intervention and De-Escalation. In practice very little is done.

67. Lt. Peugh did not call a mental health professional, but just rolled the door and called the five-man cell extraction team that was suited up and ready to go in.

68. Chestnut complied with the cell extraction team's orders to present his hands to be cuffed but they beat and kicked him shouting "stop resisting" over and over.

69. Chestnut shouted out that he was being beaten with shackles.

70. In fact, the members of the cell extraction team were inflicting numerous bleeding gashes to Chestnut's face and head that would require stitches to close.

71. Again, Chestnut lost control of his bowels as a result of the fear and pain.

72. Chestnut was brought out of the cell bleeding from several places on his face.

73. The gashes in Chestnut's face were deep and numerous. The worst injuries required sutures and the blood kept flowing, soaking through the gauze.

74. Like mental health staff in Florida prisons, medical staff generally show great deference to abusive prison guards and often turn a blind eye to abuses.

75. Michael Collins, the ARNP who treated Chestnut, would have noticed that the gashes on Chestnut's face had to be caused by sharp hard pointed objects.

76. Nothing that cell extraction team members are permitted to carry into a cell with them fit that description except for hand and leg shackles.

77. Collins did not report that anything concerned him about the type of wounds Chestnut had received.



78. In fact, the diagram of Chestnut's multiple facial wounds were very similar to the wounds inflicted by Sgt. Brown and his colleagues at FSP in December 2018.

Above, 2018; Below, 2019



79. Ironically, on the diagram showing the numerous gashes to Chestnut's face, prison medical staff added a "happy face" depicting Chestnut with a big smile.

80. Fortunately, Colonel Jeffery Lindsey, a 27-year veteran of the Florida Department of Corrections, reviewed the video and knew something was wrong.

81. Lindsey was unable to get a clear view of the cell extraction because the view taken by the camera operator, Joel Starling, was far from ideal. However, he could hear Chestnut shouting that he was being beaten with shackles and the wounds to Chestnut's face and head did not appear consistent with a proper cell extraction.

82. Lindsey also noted that Chestnut emerged with his face covered in blood.

83. Colonel Lindsey reported his concerns to Warden Tony Anderson and the Emergency Action Center (EAC) Duty Officer David Snow.

84. Snow told Col. Lindsey that he could not report Lindsey's findings because medical staff had to determine if a use of force was excessive or inconsistent.

85. There, the matter was dropped by Warden Anderson.

86. All this time, Sgt. Robert Brown stood at the periphery of the cell extraction event winking at Chestnut. Brown made gunshot gestures at Chestnut with his thumb and forefinger as Chestnut passed him going to the medical department.

## Causes of Action

**I.   Violation of 42 U.S.C. § 1983 for First Amendment Retaliation**

Plaintiff re-alleges the Common Allegations of Fact.

87. Plaintiff is entitled to relief against Michael Brown, Sterling Peugh, Trent Rulevitch, Willie Oliver, Sifoa Robbins, Lyndell Hampton, and Robert Petry, for acts designed to chill the exercise of speech and redress as retaliation for having previously exercised protected speech and redress such that a person of ordinary firmness would normally refrain from fully expressing such speech.

88. These defendants beat and taunted Chestnut making clear that their threats and beatings were in reprisal for grievances and complaints he had made in the past.

89. As a direct and proximate result of these defendants' threats and physical abuse, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in the common allegations of fact above.

90. As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

   WHEREFORE, Plaintiff demands judgment as noted below.

**II.   Violation of 42 U.S.C. § 1983 for Excessive Force**

Plaintiff re-alleges the Common Allegations of Fact.

91. Plaintiff is entitled to relief against Defendants Michael Brown, Sterling

10

Peugh, Trent Rulevitch, Willie Oliver, Sifoa Robbins, Lyndell Hampton, and Robert Petry, for excessive force in violation of the Eighth Amendment as more fully described in the common allegations of fact, Section B, above.

92. As a direct and proximate result of these defendants' unlawful acts, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in the common allegations, Section B above.

93. As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

### III. Violation of 42 U.S.C. § 1983 for Supervisor Liability

Plaintiff re-alleges the Common Allegations of Fact:

94. Plaintiff is entitled to relief against Defendants Michael Brown and Sterling Peugh for deliberate indifference toward their subordinates' acts of excessive force without penological purpose and acts intended to chill and retaliate for protected speech and efforts at redress such that a person of ordinary firmness would refrain from fully exercising such speech, as further specified by Section B above.

95. As a direct and proximate result of Defendants' coordination and direction of unlawful violence, Plaintiff has suffered various emotional and physical injuries, anxiety, distress and physical pain, as described more fully in Section B above.

96. As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

**IV.     Violation of 42 U.S.C. § 1983 for Failure to Intervene**

Plaintiff re-alleges the Common Allegations of Fact:

97.  Plaintiff is entitled to relief against Michael Brown, Sterling Peugh, Trent Rulevitch, Joel Starling, Willie Oliver, Sifoa Robbins, Lyndell Hampton, Robert Petry, and Robert Brown, for failing to intervene to prevent excessive force intended to chill and retaliate for protected speech, though able, as specified in Section B.

98.  As a direct and proximate result of these defendants' failure to intervene to prevent the unlawful violence of the others, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in Section B above.

99.  As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

**V.     Violation of 42 U.S.C. § 1983 for Failure to Protect**

Plaintiff re-alleges the Common Allegations of Fact:

100.  Plaintiff is entitled to relief against Defendant Michael Brown, Sterling Peugh, Trent Rulevitch, Joel Starling, Willie Oliver, Sifoa Robbins, Lyndell Hampton, Robert Petry, Robert Brown for failure to protect Plaintiff from harm by others by excessive force as retaliation for having previously exercised protected speech.

101.  As a direct and proximate result of these defendants' failure to protect Plaintiff from harm by others, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in Section B above.

102.  As Plaintiff has been required to engage the services of counsel, he is entitled

to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

## VI. Conspiracy to Violate Civil Rights under 42 U.S.C. § 1983

Plaintiff re-alleges the Common Allegations of Fact:

103. Plaintiff is entitled to relief against Defendants Michael Brown, Sterling Peugh, Trent Rulevitch, Joel Starling, Willie Oliver, Sifoa Robbins, Lyndell Hampton, Robert Petry, Robert Brown, Tony Anderson, David Snow, and Michael Collins, for conspiring to violate the rights of the Plaintiff by acts designed to achieve a personal goal of racial animus and revenge and carry out a criminal purpose.

104. The defendants all agreed to commit or further one or more of the unlawful acts described above, including unlawful chilling of speech, unlawful violence, the direction and coordination of unlawful violence, and failure to protect or intervene.

105. As a direct and proximate result of these unlawful acts, Plaintiff has suffered emotional and physical injuries, distress and pain, as described more fully above.

106. As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

## **Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests of the Court:

A. Compensatory damages in an amount to be determined, including damages for physical injury and mental pain and suffering;

B. Punitive damages against the individual defendants for their malicious and unconscionable actions depriving Plaintiff of his constitutional rights;

13

C. Reasonable attorney's fees and costs under 42 U.S.C. § 1988;

D. Trial by jury on all counts so triable; and

E. Any further relief this Court deems just and proper.

Respectfully submitted on 12/18/23,   *s/ James V. Cook*
James V. Cook, Esq.
Florida Bar Number 0966843
LAW OFFICE OF JAMES COOK
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

*/s/ James M. Slater*
James M. Slater, Esq.
Florida Bar Number 111779
SLATER LEGAL PLLC
113 S. Monroe Street
Tallahassee, Florida 32302
Tel: (305) 523-9023
james@slater.legal

Attorneys for Plaintiff