UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| GENARD DENEZ CHESTNUT,<br><br>　　Plaintiff,<br><br>v.<br><br>TONY ANDERSON, DAVID SNOW, MICHAEL BROWN, STERLING PEUGH, TRENT RULEVITCH, SIFOA ROBBINS, WILLIE OLIVER, LYNDELL HAMPTON, ROBERT PETRY, JOEL STARLING, ROBERT BROWN, individually,<br><br>　　Defendants. | Case No. 3:23-cv-01478-WWB-JBT<br><br>**JURY TRIAL DEMANDED** |

**AMENDED COMPLAINT FOR DAMAGES**

Plaintiff Genard Denez Chestnut sues all Defendants and alleges:

**Jurisdiction And Venue**

1. Plaintiff sues pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of rights. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b), this being the district where the claim arose.

3. All conditions precedent to this lawsuit, including exhaustion of administrative remedies, have occurred, been performed, or been waived.

## **Parties**

4. At all times material hereto, Plaintiff GENARD DENEZ CHESTNUT was an inmate in the custody and care of the Florida Department of Corrections (FDC).

5. At all times material hereto, TONY ANDERSON was Warden at Union Correctional Institution (UCI). He is sued individually.

6. At all times material hereto, DAVID SNOW was Emergency Action Center (EAC) Officer at Union Correctional Institution. He is sued individually.

7. At all times material hereto, MICHAEL BROWN was a correctional captain at Union Correctional Institution. He is sued individually.

8. At all times material hereto, STERLING PEUGH was a correctional lieutenant at Union Correctional Institution. He is sued individually.

9. At all times material hereto, TRENT RULEVITCH was a correctional sergeant at Union Correctional Institution. He is sued individually.

10. At all times material hereto, WILLIE OLIVER was a correctional officer at Union Correctional Institution. He is sued individually.

11. At all times material hereto, LYNDELL HAMPTON was a correctional officer at Union Correctional Institution. He is sued individually.

12. At all times material hereto, ROBERT PETRY was a correctional officer at Union Correctional Institution. He is sued individually.

13. At all times material hereto, JOEL STARLING was a correctional officer at Union Correctional Institution. He is sued individually.

14. At all times material hereto, ROBERT BROWN was a correctional sergeant at Union Correctional Institution. He is sued individually.

15. At all times material hereto, each of the above-named Defendants was acting under color of law.

## Common Allegations of Fact

16. The Florida Department of Corrections (FDC) holds thousands of people in solitary confinement, worsening by isolation the emotional deterioration the most vulnerable prisoners including those impaired by mental illness.

17. FDC also undermines the free speech and due process of many inmates, particularly Black inmates like Genard Chestnut, who are threatened, humiliated, and physically harmed for complaining about prison staff misconduct.

18. FDC permits officers and medical staff to deny due process and necessary care with impunity by fabricating "refusals" of participation in due process hearings and medical and mental health diagnosis and treatment.

19. The isolation of Confinement and Close Management gives free rein to white supremacists and predatory guards who torment inmates through racial slurs, sexual humiliation, planted contraband, false charges, fictitious excuses for excessive force, denial of food, exposure to cold without bedding or clothes, and chemical agents.

20. Inmates in confinement are frequently denied showers and recreation, phone calls, visits, education, based on fabricated charges. Mail, including legal mail and grievances are tampered with and intercepted. Searches

are used to destroy property including family pictures and legal papers. Incompatible inmates are often housed together and forced to fight each other for retaliation and entertainment.

21. Prisoners are often frustrated in registering complaints by failure to provide grievance receipts, interception of grievances or withholding grievance responses until it is too late for an appeal (since processed grievances must be attached).

### A. Incident at Florida State Prison

22. In 2018, Plaintiff was housed at Florida State Prison (FSP) in Raiford, Florida, across the street from Union C.I. where the events complained of take place.

23. Chestnut had a long history of filing grievances and legal actions at FSP and became the target of officers who were notorious for brutality and racial animus.

24. Chestnut responded to the brutality and racism by writing more grievances and filing more legal actions against the most brutal guards when he was threatened or physically abused and frequently suffered more abuse for his efforts.

25. Many officers who worked at FSP, including Defendant Sgt. Robert Brown, also worked at Union C.I. creating work and social ties between the two prisons.

26. Sgt. Brown, Capt. Steven Lola, and others had abused Chestnut at FSP in December of 2018 and Chestnut had written grievances against Brown and his fellow officers. Specifically, on or about December 7, 2018, while Plaintiff was awaiting transfer from FSP to another facility, Sgt. Brown and others gratuitously and viciously beat Plaintiff with shackles and their fists until he lost consciousness and control of his bowels, soiling his boxers.

27. The abuse at FSP was part of a pattern of abuse by a group of security officers who routinely indulge in brutal acts against prisoners in retaliation for expressions of protected speech, including grievances on abuse.

28. These groups of officers have been referred to as a "negative subculture" by use of force auditors and as a "goon squad" by long-time Florida prison observers.

29. After the December 2018, incident, Capt. Lola said he would call ahead to his friends at the institution where Chestnut would be transferred and tell them to finish taking care of Plaintiff. He told Chestnut "You better keep your mouth shut!"

**B. Move to Union Correctional Institution**

30. On December 2, 2019, after being housed in other prisons, Chestnut was transferred to Union Correctional Institution, across the street from FSP.

31. As noted, officers would frequently go back and forth between the two institutions, working for one institution, then the other. Close friendships and associations formed between officers at Union C.I. and FSP.

32. Robert Brown, who had abused Chestnut at FSP, and now worked at Union C.I., remembered Chestnut from 2018 and still had a score to settle because Chestnut, despite warnings, wrote Brown up over the December 2018 incident.

33. At Union C.I., Brown took every opportunity to threaten Chestnut and remind him of the day he and other FSP officers beat his face with steel handcuffs.

34. For some time, other officers at Union C.I. had been threatening and harassing Chestnut and trying to provoke an incident to justify another use of force, including the Defendants.

35. On December 18, 2019, Plaintiff was housed in Union C.I., V-Dorm, Cell 4107. Between 9 and 10 a.m., Chestnut was sprayed repeatedly with pepper spray as part of this plan to torture and punish Chestnut. At no time was Plaintiff doing anything that would warrant the application of chemical agents and such application served no penological interest. It was purely to punish Plaintiff for speaking out about the horrific abuse he suffered in prison.

36. Sergeant Brown, Captain Brown, and Lieutenant Sterling Peugh were all present and each agreed that they would create a pretext for a cell extracton and call in a cell extraction team to further punish Plaintiff for his history of writing grievances and filing legal actions.

37. After the third application of pepper spray, Captain Michael Brown asked Chestnut if he was ready to cuff up and Chestnut responded that he was.

6

38. Lt. Sterling Peugh, who knew about Chestnut's history and wanted to punish him, then ordered Chestnut to comply with a standard strip search for no other reason than to set him up to be subjected to unlawful use of force.

39. To comply with a strip search, an inmate undresses, turns around and squats and coughs to demonstrate that he does not have anything lodged in his rectum.

40. The process was very familiar to Chestnut, and he had done it scores, if not hundreds of times during his time in Florida prisons; he was used to it.

41. However, Florida prison guards would sometimes take advantage of the fact that prison rules did not permit video recording of a naked inmate and would pretend the inmate, after taking off all his clothes, refused to squat and cough. That is what happened on this occasion.

42. Lt. Sterling Peugh used this familiar ploy to "run a team" on Chestnut—meaning to falsely suggest that Chestnut was not complying with orders so that he could send in a five-man heavily padded cell extraction team to use force on him.

43. On camera, Lt. Peugh accused Chestnut of failing to squat and cough, despite Chestnut calling out that he was complying with Peugh's commands.

44. The camera operator would not have been able to video-record Chestnut because he was naked when he turned around to squat and cough as

ordered.

45. Chestnut complied because he knew that if the cell extraction team came in the cell, they would beat him with steel shackles as they did at FSP in 2018.

46. Because Chestnut was a "Psych Level S-3," had he really been resisting orders, Peugh should have called in a mental health professional to do crisis intervention.

47. S-3 Inmates like Chestnut who suffer from mental illness are intended to be aided in dealing with the demands of prison life by mental health professionals trained to do Crisis Intervention and De-Escalation. In practice very little is done.

48. Lt. Peugh did not call a mental health professional, but just rolled the door and called the five-man cell extraction team that was suited up and ready to go in. Lt. Peugh did this not for penological reasons but instead to sadistically and maliciously torture and punish Chestnut.

49. The five-man cell extraction team was composed of Defendants Hampton, Oliver, Petry, Robbins, and Rulevitch (the "CET Defendants"). Each of the CET Defendants were aware of Plaintiff's history and each were in agreement with the plan to "run team" on him and severely injure him without cause or justification.

50. Chestnut complied with CET Defendants' orders to present his hands to be cuffed but they beat and kicked him shouting "stop resisting" over

and over despite the fact that he was not resisting. These tactics were employed by the CET Defendants to falsely justify their use of force on Chestnut.

51.  Each of the CET Defendants cooperated in the application of excessive force, beating and kicking Chestnut or striking him with steel handcuffs which left characteristic gashes all over his face. All of this was done while one of the CET Defendants stood in the way of the camera, preventing the operator from depicting what the CET Defendants were doing to Chestnut. At no time during these events was Chestnut resisting or justifying the use of force in any way. Instead, the CET Defendants were sadistically and maliciously attacking Plaintiff for no justifiable reason.

52.  Each of the CET Defendants were acting at close quarters and had the notice and opportunity to intervene to protect Chestnut from the sustained, repeated, unlawful physical abuse by the others but failed to do so.

53.  Each of the CET Defendants tried to drown out Chestnut's cries that he was being beaten with cuffs with shouts of "stop resisting" and "comply" although Chestnut was being compliant.

54.  The cooperative beating took place with the expectation that each of the members of the team would cooperate to protect the others from accountability, a common interpretation of the FDC motto, "We Never Walk Alone."

55.  However, Colonel Jeffery Lindsey, reviewing the video, was able to hear Chestnut crying out that he was being beaten with shackles. Colonel

Lindsey later attested to this and added that when Chestnut emerged from the cell, he had injuries that were inconsistent with a proper cell extraction.

56. Eventually, Peugh was satisfied by his subordinates' work and yelled out "that's enough, cuff him up." He had to repeat this several times before the CET Defendants stopped hitting and kicking Chestnut. Once he was cuffed up, naked, and prostrate on the ground, the CET Defendants continued to strike Plaintiff.

57. The blows inflicted by the CET Defendants resulted in numerous bleeding gashes to Chestnut's face and head that would require stitches to close.

58. Chestnut lost control of his bowels as a result of the fear and pain.

59. Chestnut was brought out of the cell by the CET Defendants bleeding from several places on his face.

60. The gashes in Chestnut's face were deep and numerous. The worst injuries required sutures and the blood kept flowing, soaking through the gauze.

61. All this time, Sgt. Robert Brown stood at the periphery of the cell extraction event winking at Chestnut. Brown made gunshot gestures at Chestnut with his thumb and forefinger as Chestnut walked past him going to the medical department.

62. Like mental health staff in Florida prisons, medical staff generally show great deference to abusive prison guards and often turn a blind eye to abuses.

63. Michael Collins, the ARNP who treated Chestnut, would have noticed that the gashes on Chestnut's face had to be caused by sharp hard pointed objects.

64. Nothing that cell extraction team members are permitted to carry into a cell with them fit that description except for hand and leg shackles.

65. Collins did not report anything about the type of wounds Chestnut received but did illustrate the number and location.

66. In fact, the diagram of Chestnut's multiple facial wounds was very similar to the wounds inflicted by Sgt. Brown and his colleagues at FSP in December 2018.



| 2018 Diagram of Injuries | 2019 Diagram of Injuries |

67. Ironically, on the diagram showing the numerous gashes to Chestnut's face, prison medical staff added a big "happy face" depicting a big smile.

68. Fortunately, Colonel Jeffery Lindsey, a 27-year employee of the Florida Department of Corrections, reviewed the video and knew something was wrong.

69. Lindsey was unable to get a clear view of the cell extraction because the position of the camera operator, Joel Starling, was not optimal. However, he

could hear Chestnut shouting that he was being beaten with shackles and the wounds to Chestnut's face and head did not appear consistent with a proper cell extraction.

70. Lindsey also noted that Chestnut emerged with his face covered in blood.

71. Colonel Lindsey reported his concerns to Warden Tony Anderson and the Emergency Action Center (EAC) Duty Officer David Snow.

72. Snow incorrectly told Col. Lindsey that he could not report those findings because medical staff had to determine if a use of force was excessive or inconsistent. Snow, Anderson, and the defendants present during the cell extraction each reached an understanding that the matter would be quashed and not further evaluated notwithstanding Lindsey's credible evidence of misconduct, as such further investigation could reveal the scope of the misconduct and have a negative effect on the prison, including possible oversight. None of the defendants wanted this, so they each agreed that they would take steps to minimize what happened to Plaintiff or make excuses—such as requiring the involvement of medical staff to show excessive force—to subvert any possible reasoning for further investigation.

73. There, the matter was dropped by Warden Anderson without any investigation pursuant to defendants' agreement.

## Causes of Action

I.     **Violation of 42 U.S.C. § 1983 for First Amendment Retaliation**

Plaintiff re-alleges Paragraphs 1 through 73, as though fully set forth herein.

74.     Plaintiff is entitled to relief against Michael Brown, Sterling Peugh, Trent Rulevitch, Willie Oliver, Sifoa Robbins, Lyndell Hampton, and Robert Petry, for acts designed to chill the exercise of speech and redress as retaliation for having previously exercised protected speech and redress such that a person of ordinary firmness would normally refrain from fully expressing such speech.

75.     These defendants beat and taunted Chestnut making clear that their threats and beatings were in reprisal for grievances and complaints he had made in the past.

76.     As a direct and proximate result of these defendants' threats and physical abuse, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in the common allegations of fact above.

77.     As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

## II. Violation of 42 U.S.C. § 1983 for Excessive Force

Plaintiff re-alleges Paragraphs 1 through 73, as though fully set forth herein.

78. Plaintiff is entitled to relief against Defendants Michael Brown, Sterling Peugh, Trent Rulevitch, Willie Oliver, Sifoa Robbins, Lyndell Hampton, and Robert Petry, for excessive force in violation of the Eighth Amendment as more fully described in the common allegations of fact, Section B, above.

79. As a direct and proximate result of these defendants' unlawful acts, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in the common allegations, sections A and B above.

80. As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

## III. Violation of 42 U.S.C. § 1983 for Supervisor Liability

Plaintiff re-alleges Paragraphs 1 through 73, as though fully set forth herein.

81. Plaintiff is entitled to relief against Defendants Michael Brown and Sterling Peugh for deliberate indifference toward their subordinates' acts of excessive force without penological purpose and acts intended to chill and retaliate for protected speech and efforts at redress such that a person of ordinary firmness would refrain from fully exercising such speech, as further

specified in the Common Allegation of Facts, Section B above.

82. As a direct and proximate result of Defendants' direct involvement, including coordination and direction of unlawful violence, Plaintiff has suffered various emotional and physical injuries, anxiety, distress and physical pain, as described more fully in Section B above.

83. As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

## IV. Violation of 42 U.S.C. § 1983 for Failure to Intervene

Plaintiff re-alleges Paragraphs 1 through 73, as though fully set forth herein.

84. Plaintiff is entitled to relief against Michael Brown, Sterling Peugh, Trent Rulevitch, Joel Starling, Willie Oliver, Sifoa Robbins, Lyndell Hampton, Robert Petry, and Robert Brown, for failing to intervene to prevent excessive force intended to chill and retaliate for protected speech, though able, as specified in the Common Allegation of Facts, Section B.

85. As a direct and proximate result of these defendants' failure to intervene to prevent the unlawful violence of the others, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in the Common Allegation of Facts, Section B above.

86. As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

**V.    Violation of 42 U.S.C. § 1983 for Failure to Protect**

Plaintiff re-alleges Paragraphs 1 through 73, as though fully set forth herein.

87. Plaintiff is entitled to relief against Defendant Michael Brown, Sterling Peugh, Trent Rulevitch, Joel Starling, Willie Oliver, Sifoa Robbins, Lyndell Hampton, Robert Petry, and Robert Brown for failure to protect Plaintiff from harm by others by excessive force as retaliation for having previously exercised protected speech.

88. As a direct and proximate result of these defendants' failure to protect Plaintiff from harm by others, Plaintiff has suffered various emotional and physical injuries, distress and pain, as described more fully in the Common Allegations of Fact, Section B above.

89. As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

**VI.     Conspiracy to Violate Civil Rights under 42 U.S.C. § 1983**

Plaintiff re-alleges Paragraphs 1 through 73, as though fully set forth herein.

90.     Plaintiff is entitled to relief against Defendants Michael Brown, Sterling Peugh, Trent Rulevitch, Joel Starling, Willie Oliver, Sifoa Robbins, Lyndell Hampton, Robert Petry, Robert Brown, Tony Anderson, David Snow, and Michael Collins, for conspiring to violate the rights of the Plaintiff by acts designed to achieve a personal goal of racial animus and revenge and carry out a criminal purpose.

91.     The defendants all agreed to commit or further one or more of the unlawful acts described above, including unlawful chilling of speech, unlawful violence, the direction and coordination of unlawful violence, and failure to protect or intervene, as well as the assurance that they would cooperate to cover up any investigation into the misconduct.

92.     As a direct and proximate result of these unlawful acts, Plaintiff has suffered emotional and physical injuries, distress and pain, as described more fully above.

93.     As Plaintiff has been required to engage the services of counsel, he is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff demands judgment as noted below.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests of the Court:

A. Compensatory damages in an amount to be determined, including damages for physical injury and mental pain and suffering;

B. Punitive damages against the individual defendants for their malicious and unconscionable actions depriving Plaintiff of his constitutional rights;

C. Reasonable attorney's fees and costs under 42 U.S.C. § 1988;

D. Trial by jury on all counts so triable; and

E. Any further relief this Court deems just and proper.

Respectfully submitted on 6/10/24,

/s/ *James V. Cook*
James V. Cook, Esq.
Florida Bar Number 0966843
Law Office of James Cook
314 West Jefferson Street
Tallahassee, Florida 32301
(850) 222-8080; 561-0836 fax
cookjv@gmail.com

/s/ *James M. Slater*
James M. Slater, Esq.
Florida Bar Number 111779
Slater Legal PLLC
2296 Henderson Mill Rd. N.E. #116
Atlanta, Georgia 30345
Tel: (305) 523-9023
james@slater.legal

*Attorneys for Plaintiff*